# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | **I.D. No. 2201002540** |
| | ) | |
| **JOSEPH CASALETTO,** | ) | |
| **Defendant.** | ) | |

## Memorandum Opinions and Orders

### *On Defendant's Motion for Judgment of Acquittal* – **DENIED**

Submitted:  April 11, 2023
Decided: May 3, 2023

### *On Defendant's Motion for New Trial* – **DENIED**

Submitted:  April 11, 2023
Decided: May 3, 2023

Isaac Rank, Esquire, Deputy Attorney General, Attorney for the State of Delaware

Joseph Hurley, Esquire, Attorney for Defendant Joseph Casaletto

**BRENNAN, J.**

Joseph Casaletto ("Defendant") was arrested and ultimately indicted with Driving Under the Influence stemming from a January 10, 2022, encounter with Middletown Police in which he was found asleep behind the wheel of his running Volkswagen Jetta in a controlled turn lane throughout multiple cycles of a traffic light.[1]  Defendant was granted leave of this Court to file an out of time Motion to Suppress, which was heard on Monday, April 3, 2023.[2]  This motion was denied the following day and trial began immediately following on Tuesday, April 4, 2023.

Mid-trial, Defendant twice moved for a mistrial, both motions were ultimately denied.  The first motion was denied on its merit, and the second motion was denied as moot.  The jury rendered a verdict on Thursday, April 6, 2023, convicting Defendant of the sole charge of DUI, finding unanimously that the Defendant's blood contained a prohibited alcohol content.[3]  Following the jury's verdict, the State moved to revoke Defendant's bail, as he now faces a minimum mandatory sentence of incarceration.  The Court granted this motion.

## I.    POST TRIAL MOTIONS.

Following trial, Defendant filed four (4) motions.  A Motion for Reduction of Bail; Motion for Judgment of Acquittal; Motion for a New Trial; Motion for a

---

[1]    *State v. Casaletto*, ID No. 2201002540, D.I. 1.
[2]    D.I. 19.
[3]    D.I. 27.

Certificate of Reasonable Doubt. The latter motion has been withdrawn as premature by Defendant and will not be considered here. The motion to restore bail will be addressed in person in the courtroom on May 3, 2023, at 9:30 a.m.

## II. Motion for New Trial.

At Defendant's trial, the State presented both an impairment theory, as well as a prohibited alcohol content theory of criminal liability before the jury. The jury was presented with the Body Worn Cameras of two Middletown Police Department Officers present on scene which showed Defendant asleep behind the wheel with extremely loud music playing and captured the entire encounter that ensued following the police successfully awakening Defendant. The State additionally presented the Body Worn Camera of the arresting Officer when the blood draw occurred by the Phlebotomist at Middletown Police Department. Finally, the State presented the jury with both the testimony of Julie Willey, Director of the Delaware State Police Crime Lab, who testified to the blood kit instructions, the science and the testing process used by gas chromatograph, and finally the blood alcohol content of Defendant: .08.[4]

---

[4] There was no objection at trial to either Ms. Willey's qualifications or the Blood Alcohol Test Result being admitted.

When the jury returned its verdict, it noted on the verdict form that it unanimously found Defendant guilty under the prohibited alcohol content theory of Driving Under the Influence.

Under Superior Court Criminal Rule 33, the Court may grant a new trial "if required in the interest of justice."[5] "A new trial is appropriate 'only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice.'"[6] This Court has broad discretion in determining whether to grant a new trial in the interest of justice.[7]

Defendant moves for a new trial due to a sustained objection regarding his cross-examination of Julie Willey, the Delaware State Police Crime Lab Director, who tested his blood. Defense sought to elicit testimony on cross-examination that questioned the differences between Ms. Willey's created instructions for the Delaware State Police Blood Collection Kit and the manufacturer of the blood vile tube's instructions.

---

[5] Super. Ct. Crim. R. 33.
[6] *State v. Bailey*, 2020 WL 1316838, at *2 (Del. Super. Ct. Mar. 16, 2020) (quoting *State v. Johnson*, 2018 WL 3725748, at *2 (Del. Super. Ct. July 25, 2018)).
[7] *State v. Appiah*, 2019 WL 6647806, at *3 (Del. Super. Ct. Nov. 26, 2019) (citing *Johnson*, 2018 WL 3725748, at *2).

It has been well-litigated and is well-settled in Delaware Driving Under the Influence jurisprudence that the Director of the Delaware State Police Crime Lab has the authority to modify the DUI blood kit instructions, as deemed necessary.[8] It is further well-settled that any question regarding those decisions are foundational, pre-trial issues. The issue before the jury in this case was whether the inversions by the phlebotomist comported with the blood kit instructions, as raised by Defendant. It is outside the jury's purview to decide whether Ms. Willey had the authority to change the blood kit instructions.[9]

The Court, after hearing arguments of counsel, considered the Defendant's position and the opposition of counsel and allowed limited cross-examination regarding Ms. Willey's understanding of the blood kit instructions. Any further examination would have been – and remains – improper before the jury. There was no objection to the blood alcohol result coming into evidence at trial, and as noted above, the issue was raised by Defendant as to whether the inversions satisfied the blood kit instructions. Thanks to the benefits of body worn camera, the blood draw and most of the actions of the Phlebotomist were captured on video. The Phlebotomist can be seen, immediately following the blood draw, inverting the

---

[8] *See State v. Bowie*, 2022 WL 004005, at *6 (Del. Super. Ct. Sept. 1, 2022); citing *State v. Patel*, 2021 WL 754303 (Del. Super. Feb. 26, 2021); *see also State v. Fountain*, 2016 WL 4542741 (Del. Super. Aug. 20, 2016).

[9] *Id.*

blood tubes. Defense counsel used the video to cross-examine Ms. Willey on whether in her opinion, the inversions comported with her directions. Whether or not she had the authority to author the directions is not a proper question before the jury.

Defendant argues in his motion multiple lines of questioning that would have been beneficial, should he have been permitted to explore this topic on cross-examination. However, the fact remains that this topic is not appropriate for a jury to consider and has already been ruled upon multiple times by this Court. Any introduction of this issue to the jury will confuse the issues before them and the Court's ruling at the time of the initial objection remains the same.

Accordingly, the interests of justice do not require a new trial and Defendant's Motion for New Trial is **DENIED**.

### III.    MOTION FOR JUDGMENT OF ACQUITTAL.

Defendant additionally moves, post-trial, for a judgment of acquittal pursuant to Superior Court Criminal Rule 29(c). In so moving, Defendant argues that no reasonable juror could have concluded that the Phlebotomist performed her duties in complying with the blood kit instructions. In support, Defendant points to the fact that Body Worn Camera video of the blood draw did not capture all of the Phlebotomist's actions. Specifically, Defendant complains that in both the initial drawing of the sample, as well as during the post-draw mixing and performance of

the required inversions, the camera view is obstructed. Defendant argues that of what can be seen, shows that the inversions were not performed as required and as a result, the State cannot meet their burden of proving, beyond a reasonable doubt, that the gas chromatography testing of the Defendant's blood was reliable and scientifically valid.

Defendant, in his cross-examination of Ms. Willey, performed his own demonstration of an inversion with a purported blood vile, which was admittedly not the same type of blood vile used in the collection process, for demonstrative purposes.[10] As Defendant argues in his motion, Ms. Willey, after having viewed one of defense counsel's inversions, agreed that what counsel had done before her was not a complete inversion. Ms. Willey, however, and as mentioned above, was shown the video of the Phlebotomist's actions and testified they comported with the blood kit instructions.

---

[10] It is worthy to note that during closing arguments of counsel, defense counsel for the first time presented in front of the jury a purported collection vile, of the same type shown to Ms. Willey, but this time filled with tomato juice. Without objection from the State, counsel then proceeded to invert the blood tube and pointed out how the tomato juice remained on the glass vile and argued that this shows the tube in question was not properly mixed with the contained preservatives. This argument will not be considered by the Court in this motion, as it introduced a fact not in evidence at that was not placed in evidence, as there was no testimony regarding the qualities of tomato juice as it compares to blood and was an improper display before the jury.

Defendant further supports his motion by arguing that if the blood was not properly mixed with the preservative, as was argued in the Motion for New Trial, the State cannot meet its burden of proof. The State opposes this motion and argues that sufficient evidence was set forth before the jury to support its conclusion of guilt.

In a motion for judgment of acquittal pursuant to Superior Court Criminal Rule 29(c), the defendant has the burden to show that no rational trier of fact, while viewing the evidence in a light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt of all of the elements of the crime alleged.[11] It is within the sole province of the jury to "determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts. Irreconcilable conflicts will be found on in a rare case."[12]

This is not that rare case. While obstructed, there was video evidence of the contested inversions presented. The State was not required to present the testimony of the Phlebotomist in question, but the State presented evidence of the blood draw, as well as presented testimony of the Officer present for the blood draw. Extensive argument was made by counsel regarding the sufficiency of the draw and the subsequent mixing of the blood with the preservatives and in looking at the facts in

---

[11] *State v. Pittaway*, 2017 WL 5624302 at *1, Order, Johnston, J. Nov. 2, 2017 (Super. Ct.).
[12] *Id.*

the light most favorable to the State, the non-moving party, sufficient evidence was presented for a rational fact finder to conclude the State had met their burden of proof.

Accordingly, the Defendant's Motion for Judgment of Acquittal is **DENIED.**

**IT IS SO ORDERED this 3rd day of May, 2023**.

_____
**Danielle J. Brennan, Judge**

Original to Prothonotary

cc:    Issac A. Rank, Deputy Attorney General
       Joe Hurley, Esquire